***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Taylor, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 8 January 2002 as:
 STIPULATIONS
1. The employee is John M. Hodges.
2. The employer is Equity Group N.C. Division.
3. The third-party administrator at risk is Sedgwick CMS.
4. At all relevant times, defendant-employer regularly employed three or more employees and was bound by the North Carolina Workers' Compensation Act. An employee-employer relationship existed between the employer and the employee on or about April 16, 2001, the date of the allegedly compensable injury reflected on I.C. File No. 134018.
5. A Form 22 Wage Chart yields the maximum compensation rate for the year 2001.
6. The employee has been out of work on April 19, 2001 and from April 24, 2001 through the present.
7. The parties stipulated into evidence, without need for further identification or verification, the following:
Stipulated Exhibit 1 Industrial Commission forms;
Stipulated Exhibit 2 The plaintiff's medical records;
Stipulated Exhibit 3 The plaintiff's recorded statement; and
Stipulated Exhibit 4 Supervisor's accident report.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, the plaintiff was a 48-year-old male, born August 20, 1953. For the six months preceding April 16, 2001, the plaintiff worked for defendant-employer as a mechanic, welding, repairing machinery, performing electrical work, and troubleshooting. The plaintiff worked a mandatory 48 hours per week and usually worked 50 to 55 hours. Prior to his employment with defendant-employer the plaintiff was employed for seventeen years as a mechanic with Toletex until they went out of business.
2. On April 16, 2001, the plaintiff was working overtime as the plant was closed over Easter. As the plaintiff was approaching a piece of machinery on which he was going to place a guard, the plaintiff's feet went out from under him and he fell. The plaintiff did not recall any slippery substances or obstructions on the floor. The plaintiff landed on his right side and back. The plaintiff felt immediate pain when he fell but "shook it off" and continued to work.
3. At the time of the plaintiff's fall, his supervisor was not present, and the plaintiff did not report his injury, as no other supervisory personnel were present in the plant at that time.
4. The plaintiff reported to work the following day, April 17, 2001. On that date, he reported his fall and continuing pain to Danny Stanley, a supervisor.
5. On April 18, 2001, the plaintiff's pain continued to worsen and he sought medical treatment. Patrick Webb, his supervisor, sent him to the Human Resources manager, Laurel Hale. Ms. Hale referred the plaintiff to Dr. Guarino. Dr. Guarino is the doctor who treats all of defendant-employer's workers' compensation claims and gives all of defendant-employer's pre-employment physicals.
6. The plaintiff was seen by Dr. Guarino, who diagnosed the plaintiff with a hip contusion, ruled out sciatica, and recommended light duty with no lifting greater than fifteen pounds, no forceful pushing or pulling, no bending or stooping, and avoidance of sitting.
7. The plaintiff's pain continued to worsen and he sought treatment at the Morehead Memorial Hospital emergency room. He was prescribed additional medication and recommended continued light duty with the same restrictions.
8. The plaintiff returned to Dr. Guarino on April 23, 2001 indicating that his pain had not improved. Dr. Guarino was of the opinion that the plaintiff had a possible disc herniation and sought permission from defendant-employer to conduct an MRI. The plaintiff was continued on modified duty.
9. The plaintiff worked light duty for defendant-employer until April 25, 2001. On April 25, 2001, because of increased pain, the plaintiff went to the emergency room at Martinsville Memorial Hospital. At that time, he was diagnosed with severe low back pain and mild to moderate L5 radiculopathy. The plaintiff was seen by Dr. Shields who ordered an MRI and recommended no work for several days.
10. The plaintiff also saw Dr. Robert Piat during this time to obtain refills on several medications unrelated to his work-related injury. When he described a back injury to Dr. Piat, Dr. Piat also prescribed pain medication.
11. The plaintiff continued to be written out of work by his physicians, including Dr. Shields, Dr. Piat, Dr. Eller, his family physician, and Dr. Vascik, his neurosurgeon. After April 25, 2001, none of the plaintiff's physicians recommended work of any kind. The plaintiff did not return to work with defendant-employer after his emergency room visit at Martinsville Memorial Hospital on April 25, 2001.
12. Dr. Guarino, at defendant-employer's request, as the company doctor for defendant-employer initiated ex parte communications with other physicians who had written the plaintiff out of work. The purpose of these communications was to convince the plaintiff's physicians to change the plaintiff's work restrictions and allow him to work. The plaintiff was not made aware of these communications and certainly did not authorize them.
13. Defendant did not authorize medical treatment for the plaintiff with any physician at any time other than Dr. Guarino, the company doctor.
14. Dr. Guarino did not refer the plaintiff for a second opinion or to a specialist, even though the plaintiff indicated that he continued to have pain and felt that he was unable to work and even though there was an MRI scan of the plaintiff's back revealing a recurrent disc herniation to the left and that the plaintiff had had a prior herniated disc in that area.
15. Because of Dr. Guarino's active role in lobbying the other doctors to return the plaintiff to work, thereby assisting defendant-employer in its claim investigation of the plaintiff's case, and because of Dr. Guarino's clear refusal to refer the plaintiff to a specialist even though there were abnormal findings on the plaintiff's MRI, Dr. Guarino's testimony in this matter is given little weight.
16. Dr. Guarino's attempt to lobby other treating physicians is inconsistent with both the spirit and the letter of established North Carolina Workers' Compensation law. This analysis may have been different had the other doctors contacted Dr. Guarino regarding his previous treatment.
17. On May 8, 2001, the plaintiff presented to Dr. James Vascik, a neurosurgeon, for his pain. Dr. Vascik had operated on the plaintiff's back in 1998 at L5-S1. The plaintiff presented and gave a history of his April 16, 2001 fall and indicated that Dr. Guarino had said that nothing was wrong with the plaintiff even though his MRI showed a recurrent disc herniation. The plaintiff indicated that Dr. Guarino had told him that the disc herniation could not possibly be causing his pain because the rupture was on the opposite side of his pain. On that date, the plaintiff was complaining of horrible pain shooting down his right leg into his calf and pain in his lumbar spine. The plaintiff did not complain of any pain on the left side and indeed did not experience pain on the left side at any point following his April 16, 2001 fall.
18. When Dr. Vascik reviewed the plaintiff's MRI he was of the opinion that the plaintiff had a large, left-sided and central L5-S1 recurrent disc rupture. Dr. Vascik gave the plaintiff the option of bed rest, physical therapy, chiropractic treatment, steroid injections, or surgery. Because the plaintiff had a very successful surgery previously, the plaintiff chose to have surgery. Dr. Vascik performed surgery on the plaintiff's ruptured disc on May 11, 2001 and removed a very large disc fragment.
19. Dr. Vascik noted that the plaintiff's symptoms were on the opposite side of his rupture but that in his practice such a finding was not unusual. Dr. Vascik could not explain the physiology of such a manifestation of pain but had certainly encountered this in his practice.
20. Following the plaintiff's May 11, 2001 surgery, the plaintiff's pain subsided only temporarily and then recurred two days following the surgery. A subsequent MRI showed a possible surgical problem, and on June 11, 2001, Dr. Vascik performed a second surgery on the plaintiff's back. As of September 13, 2001, the plaintiff continued to experience significant pain, and was told by Dr. Vascik to be as active as possible, walking and going up and down stairs as often as possible as well as swimming and riding an exercise bike. The plaintiff was and continues to be restricted to no lifting greater than twelve pounds a few times a day, limited driving, and no employment for 40 hours a week or eight hours a day. On September 13, 2001, Dr. Vascik referred the plaintiff out for pain management, where the plaintiff continued to receive treatment at the time of the hearing. Dr. Vascik was of the opinion that on May 8, 2001, when the plaintiff presented to him, the plaintiff was unable to work and continued to be so up to the time of Dr. Vascik's deposition. Dr. Vascik was further of the opinion that the plaintiff bears a substantial likelihood of needing continuing and ongoing medical care.
21. By letter dated August 21, 2001, defendant-employer notified the plaintiff that his employment had been terminated.
22. On April 16, 2001, the plaintiff sustained a compensable injury by accident as a result of his fall.
23. As a direct and proximate result of the plaintiff's compensable April 16, 2001 fall, the plaintiff sustained a disc herniation and resulting pain.
24. As a direct and proximate result of his compensable injury, the plaintiff was unable to engage in activities required by his former job or any other job from April 24, 2001 and continuing.
25. As a direct and proximate result of his compensable injury, the plaintiff was and is unable to earn the same or greater wages as he was earning in his former job from April 24, 2001 and continuing.
26. The plaintiff has not reached maximum medical improvement.
27. At the time of the plaintiff's compensable injury, the plaintiff earned an average weekly wage of $925.36, entitling the plaintiff to the maximum compensation rate for the year 2001, which is $620.00.
28. The treatment which the plaintiff has received for his herniated disc and back pain was reasonably designed to effect a cure, give relief and lessen the period of disability and is hereby approved.
29. Dr. Vascik should be the plaintiff's treating physician and direct his future treatment.
30. There is a substantial risk that the plaintiff will require future medical treatment for his compensable injury.
31. Defendant appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirmed said opinion with compensation being paid to the plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. On April 16, 2001, the plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer, when he fell and suffered a disc herniation. N.C.G.S. § 97-2(6).
2. As a direct and proximate result of his compensable injury, the plaintiff was unable to engage in activities required by his former job or any other job from April 24, 2001 and continuing. N.C.G.S. § 97-29.
3. The plaintiff has not reached maximum medical improvement. N.C.G.S. § 97-31.
4. At the time of the plaintiff's compensable injury, the plaintiff earned an average weekly wage of $925.36, entitling the plaintiff to a weekly compensation rate of $620.00. N.C.G.S. § 97-29.
5. As a direct and proximate consequence of the plaintiff's compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $620.00 per week for the period from April 26, 2001 and continuing. N.C.G.S. § 97-29.
6. The treatment which the plaintiff has received for his herniated disc and back pain was reasonably designed to effect a cure, give relief, and lessen the period of disability. N.C.G.S. § 97-25.
7. Given that there is a substantial risk that the plaintiff will require future medical treatment for his compensable injury. Dr. Vascik should be the plaintiff's treating physician and direct his future treatment. N.C.G.S. § 97-25.
8. Defendant appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirmed said opinion with compensation being paid to the plaintiff. In the discretion of the Full Commission, counsel for the plaintiff is entitled to have defendants pay an attorney's fee in the amount of $5,000.00 which is in addition to the amount awarded as a percentage of the plaintiff's compensation. N.C.G.S. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his compensable injury, defendant shall pay temporary total disability compensation to the plaintiff at the rate of $620.00 per week for the period from April 24, 2001 and continuing. Portions of this amount have accrued and shall be paid in a lump sum subject to the attorney's fee in Paragraph 2.
2. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 of this Award is approved for the plaintiff's counsel and shall be paid by defendant to the plaintiff's counsel by deducting from the accrued sum and paying directly to the plaintiff's counsel and thereafter paying every fourth check to the plaintiff's counsel.
3. Defendant shall pay all past and future medical expenses incurred by the plaintiff as a result of his compensable injury.
4. Defendants shall pay to counsel for the plaintiff an attorney's fee in the amount of $5,000.00 for defending this matter on appeal to the Full Commission. This fee is to be paid in addition to the fees awarded as a percentage of the plaintiff's compensation.
5. Defendant shall pay the costs of this action.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER